(100 App. Div. 1)

SMITH v. SMITH et al.

(Supreme Court, Appellate Division, Fourth Department. December 7, 1904.)

1. WITNESSES—TRANSACTIONS WITH DECEASED PERSONS—INTEREST.

Where a widow's dower interest in certain property in controversy was subordinate to the lien of an alleged mortgage executed by her husband prior to his death, if it was a valid incumbrance thereon, she was incompetent to testify to transactions between herself and her husband tending to show that the mortgage was never delivered, etc., under Code Civ. Proc. § 829.

Appeal from Trial Term, Allegany County.

Action by James D. Smith against Jessie Smith and another. From a judgment dismissing the complaint on the merits after a trial before a referee, plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

O. P. Hurd, for appellant.
Charles A. Hawley, for respondents.

SPRING, J. In May, 1887, Frank E. Smith acquired title by purchase of the St. James Hotel property in the village of Cuba, Allegany county. The purchase price was $12,000, a part of which consisted of the assumption of certain outstanding incumbrances on the property, and which it is claimed said Smith paid. On the 2d day of October, 1899, said grantee executed a mortgage of $9,000 on said property to the plaintiff, his brother. The claim of the plaintiff is that the purchase of the hotel property was a joint investment or undertaking by his brother, Frank E. Smith, and himself, and that the mortgage mentioned was a valid lien, and founded on an adequate consideration. On the contrary, the respondents, who are respectively the widow and the son of Frank E. Smith, who died intestate in December, 1903, contend that said mortgage was given solely for the purpose of heading off actions under the civil damage act which was then in force. The mortgage was duly recorded, and afterwards discharged by a satisfaction thereof executed by the plaintiff July 7, 1890, and which was also entered of record. The

further claim of the plaintiff is that the mortgage was not in fact paid at the time he executed the discharge. He contends that it had been reduced to $8,000, and that upon its satisfaction another mortgage was given, covering the same property, and delivered to him by his brother, Frank. No such mortgage was ever recorded, but the plaintiff's position is that it was placed in a tin box in the vault of the Cuba National Bank, and to which box both his brother and himself had access. The defendants claim that, the mortgage purporting to secure the sum of $9,000 being fictitious, and given in anticipation of a difficulty which passed by, it was discharged, and no other mortgage was ever delivered to the plaintiff. The mortgage has not been discovered by the plaintiff since the death of his brother, but he maintains it has been destroyed without his knowledge or assent, and to remove the evidence of his lien or debt. The referee has found with the defendants, and we should not interfere with the judgment based on his report, for it rests on sufficient evidence or reasonable inferences, except for certain material errors committed in the reception of the evidence. As already noted, Frank E. Smith died intestate, leaving the defendant Jessie, his widow, and to whom he was married in 1895, and Martin, his son and only heir. If the mortgage for $8,000 was ever executed and delivered by Frank E. Smith, as claimed by the plaintiff, it was prior to his marriage with the defendant Jessie, so that her dower interest in the hotel property is subordinate to the lien of the mortgage if it is a valid incumbrance thereon. The proof pertaining to this mortgage was almost entirely circumstantial, and contrary inferences might readily and intelligently be drawn therefrom. The defendant Jessie G. S. Smith was a witness in behalf of the defendants upon the trial. She testified that she prepared a mortgage in the sum of $8,000, which was executed by the husband and acknowledged in the city of Rochester, and in which the plaintiff was mortgagee; that it was never delivered to the mortgagee, but kept in the tin box in the Cuba National Bank, and this box belonged to her husband, who alone had access to it. She also testified that she saw her husband open this box, and take out this mortgage. Further, that a clerk's certificate was attached to this mortgage, and she saw her husband mail it in an envelope addressed to the cashier of the Cuba National Bank; and that this mortgage was not in the handwriting of Mr. Todd. This evidence was repeatedly objected to on the ground that the witness was disqualified from testifying to these transactions by section 829 of the Code of Civil Procedure, and exceptions were duly taken. The objections were tenable. The widow derived her interest in the hotel property from her husband. If the mortgage to the defendant was a lien upon the property, the value of her interest was thereby largely lessened. Conversations or transactions between her and her husband tending to extinguish the claim of the plaintiff and to establish the invalidity of the alleged lien upon her property derived from her husband are within the purview of the disqualifying statute. Witthaus v. Schack, 105 N. Y. 332, 11 N. E. 649; Eckert v. Eckert, 13 App. Div. 490, 43 N. Y. Supp. 353. A brief reference to the testimony on behalf of the plaintiff will show the materiality of the incompetent evidence given by Mrs. Smith. Mr. Todd, a lawyer of Cuba, had testified that in the summer of 1890 he prepared a mortgage for

$6,000 or $8,000, which was executed and acknowledged by Frank to the plaintiff, and was delivered to the latter. This mortgage was after the discharge of the mortgage of $9,000, and it was stated then that only $1,000 had been paid on the preceding mortgage. There is proof tending to show that this mortgage was placed in a tin box in the Cuba National Bank. Two officers of the bank testified that they had seen a mortgage in the tin box, marked "Frank E. Smith," and the cashier testified that the mortgage was from Frank E. Smith to the plaintiff, covered the St. James Hotel property, and was to secure the sum of $6,000 or $8,000. The assistant cashier testified that Frank E. Smith took the box, with its contents, from the bank a short time before his death. The testimony of the defendant tended to establish that the mortgage which the bank officials saw in Smith's box was not the one which Todd claims to have prepared, but the one written by her, and which, according to her story, was not a genuine mortgage, or at least had never been delivered. The plaintiff is disqualified from testifying to any conversation or transaction with Frank E. Smith, and if Mrs. Smith, who was assailing the mortgage claimed to have been given to the plaintiff by her husband, is permitted to establish her defense by relating transactions with the latter, then the plaintiff is put to an obvious disadvantage, and the purpose of the prohibitory statute thwarted, and the value of her interest in the property is appreciably enhanced as a result of that kind of evidence. There are one or two other instances where this rule of prohibition was violated, but they are of minor importance, and require no special discussion, for they fall within the criticism already made to this class of testimony. The judgment is reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment reversed, and new trial granted on questions of law only, the facts having been examined, and no error found therein; with costs to the appellant to abide the event. All concur.